893 P.2d 828

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Oune SENGTHAVISOUK,
Defendant–Appellant.**

No. 20495.

Court of Appeals of Idaho.

April 26, 1995.

882

Whittier, Souza and Clark, Chtd., Pocatello, for defendant-appellant. Robert C. Naftz argued.

Alan G. Lance, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent. Myrna A.I. Stahman argued.

WALTERS, Chief Judge.

This is an appeal from a judgment of conviction and sentence entered after a plea of guilty to second degree murder. For the reasons set forth below, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On July 9, 1992, at approximately 12:30 a.m., police responded to a domestic disturbance at Oune Sengthavisouk's residence in Pocatello. According to police reports, the officers were allowed into the residence by three young children, all of whom were crying. One of the officers observed Sengthavisouk standing in the kitchen. Upon seeing the officers at the door, Sengthavisouk immediately lifted a handgun to his head and discharged it, resulting in a severe head injury. On further investigation, officers discovered the dead body of Sengthavisouk's wife, Mone Sengthavisouk (Mone), in the bedroom. She had been shot in the head at close range.

The initial investigation revealed that Sengthavisouk and his wife were having marital problems. According to individuals familiar with the parties involved, Mone had entered into a relationship with a woman, Bicky, and had moved to another state with Bicky and the Sengthavisouks' three children. Mone and Bicky returned to the Pocatello area with the children at some point in early July, 1992. On July 8, 1992, Sengthavisouk and Mone had an argument outside the residence in which Mone and Bicky were staying. After the verbal confrontation, Sengthavisouk left in his vehicle with the children. Mone left several minutes later in her own vehicle. Approximately two hours later, Sengthavisouk called the residence where Mone had been staying, stating that Mone was dead and that Bicky should come to pick her up. Bicky then contacted the police.

Sengthavisouk was charged by Information with first degree murder. I.C. §§ 18–4001, –4003(a). In preparation for trial, Sengthavisouk's counsel filed a motion for a psychological evaluation. At the hearing on the motion, Sengthavisouk's counsel argued for the appointment of a psychiatrist, Dr. Paul Leung, from Portland, Oregon, to examine Sengthavisouk, who is a refugee from Laos. Leung works specifically with Laotian, Cambodian, and Vietnamese refugees as well as those who are residents or citizens of the United States. The court granted the motion for a psychological evaluation, but appointed a local doctor, Dr. Linda Hatzenbuehler.

Pursuant to a negotiated plea agreement, Sengthavisouk subsequently pled guilty to second degree murder. At the sentencing hearing, Sengthavisouk's counsel argued for the imposition of a ten-year fixed sentence. The State urged that in order to deter others, the court should impose a unified sentence of life, with fifteen to twenty years fixed. The district court sentenced Sengthavisouk to a unified term of twenty-seven years with a minimum period of confinement of twelve years for second degree murder, and to a consecutive five-year indeterminate sentence for use of a firearm in the commission of the murder.

## ISSUES AND ANALYSIS

I. *Did the District Court Err in Denying Sengthavisouk's Motion for a Psychiatric Evaluation by Dr. Leung?*

Sengthavisouk first argues that his due process rights were violated when the district court ordered that a psychiatric evaluation be conducted by Dr. Hatzenbuehler rather than Dr. Leung. The purpose of the psychiatric evaluation was twofold: to deter-

mine whether Sengthavisouk had the capacity to understand the proceedings against him and assist in his own defense, and to determine whether Sengthavisouk was able to form the state of mind necessary to commit the crime of first degree murder, in this case, with malice aforethought. Subsequent to the appointment of Dr. Hatzenbuehler, Sengthavisouk entered a general plea of guilty to the reduced charge of second degree murder. Sengthavisouk did not condition his plea to the amended charge on the right to appeal the court's order appointing Dr. Hatzenbuehler rather than Dr. Leung. *See* I.C.R. 11(a)(2). Because Sengthavisouk entered a general plea of guilty, and failed to condition his plea pursuant to Rule 11, he cannot now challenge the district court's prior adverse ruling ordering the appointment of Dr. Hatzenbuehler rather than Dr. Leung. *See State v. Rodriguez,* 118 Idaho 957, 801 P.2d 1308 (Ct.App.1990) (unconditional plea of guilty did not preserve for appellate review an adverse ruling on a motion to suppress confession).

II. *Did Sengthavisouk's Sentence Constitute An Abuse of Discretion?*

 Sengthavisouk argues that the district court abused its discretion by imposing a unified sentence of twenty-seven years, with a twelve-year minimum period of confinement, for second degree murder, and a consecutive indeterminate term of five years for the use of a firearm in the commission of a crime. Sentencing is committed to the sound discretion of the trial court. *State v. Dallas,* 109 Idaho 670, 710 P.2d 580 (1985). Where a sentence is within the statutory maximum, we will uphold it unless the sentencing court abused its discretion. *State v. Kysar,* 116 Idaho 992, 999, 783 P.2d 859, 866 (1989). The primary requirement is that the sentence ultimately imposed be reasonable. *State v. Nice,* 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence is reasonable if it is not excessive in light of the primary objective of protection of society and any or all of the related goals of deterrence, rehabilitation, or retribution. *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). The reasonableness of a sentence is determined by focusing on the probable length of con-

finement, which, under the Unified Sentencing Act, I.C. § 19–2513, is the minimum period of incarceration imposed by the sentencing judge. *State v. Sanchez,* 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct.App.1989). In the instant case, that minimum determinate period is twelve years, well within the maximum term of life authorized by I.C. § 18–4004 for second degree murder.

 Sengthavisouk contends that even though the sentence is within the statutory limits, the sentencing judge abused his discretion because he did not "fully consider" the goal of rehabilitation when imposing Sengthavisouk's sentence. We note that a sentence need not serve all of the sentencing goals, *State v. Elliot,* 121 Idaho 786, 787, 828 P.2d 349, 350 (Ct.App.1992), and conclude that the district court's failure to expressly consider rehabilitation when imposing sentence does not constitute an abuse of discretion.

Sengthavisouk also argues that the sentence was an abuse of discretion because the presentence investigation report revealed no prior record, with the exception of a traffic ticket, that Sengthavisouk felt remorse over the death of his wife and that his children are now without parents. He further asserts that "this was a highly emotional situation which was completely out of character" for him.

A review of the transcript of the sentencing proceeding reveals that the district court clearly considered these factors in pronouncing Sengthavisouk's sentence. However, the court also took into account the fact that the couple's three children were present during the murder and may have even witnessed the killing of their mother. In addition, the court considered the goals of deterrence, the protection of society, and punishment, stating that "for such a serious act there has to be a serious punishment." We conclude that the district court properly exercised its sentencing discretion.

III. *Did the District Court Err in Failing to Order a Psychological Examination for Purposes of Sentencing?*

 Sengthavisouk contends that the district court erred by failing to order a psycho-

logical examination for purposes of sentencing. He asserts that such an examination was necessary in order to identify possible sentencing alternatives. However, it is unclear whether Sengthavisouk's argument is that the court should have granted his initial request for a psychological evaluation by Dr. Leung, or that the court should have ordered a second evaluation specifically for sentencing. In any event, Sengthavisouk has failed to preserve either question for appeal.

As previously explained, following the district court's denial of Sengthavisouk's motion to appoint Dr. Leung, Sengthavisouk entered an unconditional guilty plea. Consequently, he cannot challenge the court's order appointing Dr. Hatzenbuehler instead of Dr. Leung. Moreover, Sengthavisouk failed to object to the lack of an additional psychological evaluation prepared specifically for sentencing. As the court's failure to order a second psychological evaluation sua sponte does not constitute error, much less fundamental error, Sengthavisouk cannot be heard to complain on appeal. I.C.R. 32(d); *State v.*

*Wolfe*, 124 Idaho, 724, 864 P.2d 170 (Ct.App. 1993); *State v. Toohill*, 103 Idaho at 566–67, 650 P.2d at 708–09.

## CONCLUSION

Sengthavisouk's arguments that the district court erred in denying his motion for a psychological evaluation by Dr. Leung and in failing to order a second psychological evaluation for purposes of sentencing have not been properly preserved for appeal. In addition, we conclude that Sengthavisouk's sentence did not constitute an abuse of discretion. Accordingly, we uphold the judgment of conviction and sentence.

LANSING and PERRY, JJ., concur.